UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-61508-CIV-DIMITROULEAS/SNOW

ME TECHNOLOGY, INC., d/b/a CAA USA,

    Plaintiff,

v.

ELLIOT BROWNSTEIN,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on Plaintiff ME Technology, Inc.'s, d/b/a CAA USA ("CAA USA") Expedited Motion to Enforce Preliminary Injunction and For an Order To Show Cause Why Defendant Elliot Brownstein Should Not Be Held In Contempt of Court, filed on August 21, 2020. (ECF No. 20)   On August 23, 2020, the Honorable William P. Dimitrouleas referred CAA USA's Motion to the undersigned for a Report and Recommendation. (ECF No. 21) The undersigned conducted an evidentiary hearing on the instant Motion on September 3, 2020, and heard argument from CAA USA's counsel, the Defendant Elliot Brownstein ("Defendant") representing himself pro se, and testimony from various witnesses.

### I. PROCEDURAL BACKGROUND

CAA USA brought the underlying action for damages and injunctive relief in connection with Defendant's alleged unauthorized access of CAA USA's social media

accounts in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"). (ECF No. 1 at 3)  CAA USA also claimed that Defendant's actions constituted common law conversion, where Defendant deprived CAA USA of use of its valuable intellectual property, the login credentials and the ability to access its social media accounts. (ECF No. 1 at 5-6)  CAA USA alleged, in its Verified Complaint for Damages and Injunctive Relief, that Defendant, a former employee of CAA USA who resigned on July 23, 2020, intentionally used the login credentials for CAA USA's social media accounts to take the social media pages down in order to damage CAA USA's business. (ECF No. 1 at 2–3)

On July 27, 2020, CAA USA filed an Ex Parte Motion for Temporary Restraining Order and for an Expedited Hearing for Preliminary Injunction. (ECF No. 6)  On July 28, 2020, the Court entered an Ex Parte Temporary Restraining Order and Order Scheduling Expedited Hearing for Preliminary Injunction. (ECF No. 9)  The Honorable William P. Dimitrouleas held a hearing on the Motion for Preliminary Injunction on August 6, 2020. Plaintiff CAA USA appeared through counsel and Defendant Brownstein appeared pro se. (ECF No. 15)  Since the filing of CAA USA's complaint, CAA USA was able to restore most of its social media websites with the help of Defendant but has remained unable to recover its Instagram account. (ECF No. 8 at 1–2); (ECF No. 17 at 2–3)  On August 7, 2020, the Court entered a Preliminary Injunction (ECF No. 17) against the Defendant which stated in relevant part as follows:

1. Defendant was ordered to cooperate fully in CAA USA's attempt to restore and recover use of its Instagram page;

2. Defendant was ordered to return any valuable information, including Instagram passwords, usernames, and sign-on credentials;

3. Defendant was ordered to cease and desist from changing or taking down any of CAA USA's social media pages;

4. Defendant was prohibited from destroying, deleting, erasing, or otherwise making unavailable any materials, data, information or documents (in whatever form) that relate to CAA USA's allegations in this case.

(ECF No. 17 at 3–4).

CAA USA filed the instant Expedited Motion on August 21, 2020, (ECF No. 20) alleging that Defendant failed to comply with the Preliminary Injunction. A hearing was held on the issue before the undersigned on September 3, 2020.

## II. EVIDENCE PRESENTED

Michael Hartman ("Hartman"), the CEO of CAA USA, testified that Plaintiff CAA USA lost access to their main Instagram page CAAGEARUP ("Instagram page") on or around 10:30 a.m. on July 23, 2020, when the page was "taken down". Hartman further testified that the Instagram page came back online at the end of the first week of August but that CAA USA's competitor YRS and CAA America appeared to be in control of the Instagram page. This conclusion was based on a link which was placed on the Instagram page to the YRS website along with pictures of products which were posted to the Instagram page. The link to the YRS website has since been changed to a dead google page. Hartman testified that all of the pictures on the Instagram page were of a gun called a Micro Roni which was a product that CAA USA's competitor sold but CAA USA itself currently did not sell. Hartman was not

3

able to identify the person currently in control of the Instagram page or the person who had posted the pictures of the competitor's products and the link to the competitor's website.

CAA USA's counsel admitted an image of the Instagram page to evidence as Plaintiff's Exhibit 1. (ECF No. 33)   Hartman testified that Defendant had not offered cooperation in recovering the Instagram page however Hartman did acknowledge that Defendant sent CAA USA the passwords to the company's Twitter and Pinterest accounts.   Hartman also testified that CAA USA commissioned an outside expert to help restore the Instagram page.   Additionally, Hartman testified that CAA USA's attorneys had been in contact with Facebook's attorneys in an effort to restore the Instagram page.   These two ongoing efforts were being undertaken to restore the Instagram page without the Defendant's assistance.

Colton Carter ("Carter"), a regional sales representative at CAA USA, testified that the original login credentials to the Instagram page were shared by multiple people at the company prior to CAA USA losing access on July 23, 2020.   Carter further testified that he logged on to Defendant's computer shortly after Defendant's exit from the company.   Carter testified that Defendant's computer screen showed a search for the word "password" in the WhatsApp application which the company used to communicate with one another.   CAA USA's counsel admitted the image of this into evidence as Exhibit 2. (ECF No. 33)   Carter testified that he took the image of the WhatsApp search and that the first result showed the username and password for the Instagram page.

Carter testified that he reached out to Defendant to request the Instagram credentials but that Defendant stated he did not have them and thus could not provide them. Carter did also testify however, that Defendant turned over the Twitter and Pinterest login credentials to CAA USA. Carter further testified that he was of the opinion that an Instagram page which was deleted may not be recoverable at all and that further Carter was aware of an influencer named "Gatman" who lost his Instagram account while working with CAA USA. Carter testified that his opinion was based upon his conversations with Instagram and Facebook personnel to restore CAA USA's Instagram page. Carter was also unable to identify the individual who was controlling the Instagram page.

The undersigned asked Defendant whether he stood by his testimony at the Preliminary Injunction hearing. (ECF No. 15) Specifically the question of whether Defendant had turned over to CAA USA whatever passwords or credentials he had to the Instagram page at the time. Defendant answered that he had turned over everything he had at the time before quitting. The undersigned then asked if Defendant had anything else to give to CAA USA in terms of passwords, usernames, or any credentials which would assist CAA USA in getting the Instagram page back up. Defendant testified that he did not believe that he could be of any further help to CAA USA as far as restoring the Instagram page. Defendant did volunteer to return any photos or media he was still in possession of, however. The undersigned ordered Defendant to return this to CAA USA within one week of the hearing on the instant motion on a USB flash drive.

CAA USA asks the Court to draw adverse inferences from Defendant's invocation of his Fifth Amendment privilege at Defendant's August 13, 2020 deposition (ECF No. 20-2) in order to find a violation of the first three prongs of the Preliminary Injunction (ECF No. 17 at 3–4) and thus, to hold Defendant in contempt. CAA USA seeks the following remedies under civil contempt: (1) imprisonment until compliance with the Preliminary Injunction is established; and (2) an award of attorney's fees and costs in connection with the filing and prosecution of this motion. (ECF No. 20 at 10)   Defendant asserts that he has given CAA USA everything that he has and that there is nothing more that he can do to assist CAA USA in restoring its Instagram page.

### III. <u>DISCUSSION</u>

A party seeking an order of contempt bears the initial burden of demonstrating by clear and convincing evidence that the alleged contemnor has violated a valid court order. <u>Howard Johnson Co. v. Khimani,</u> 892 F.2d 1512, 1516 (11th Cir. 1990). The "clear and convincing" evidence must establish that an order was violated and that (i) the allegedly-violated order was valid and lawful; (ii) the order was clear and unambiguous; and (iii) the alleged violator had the ability to comply. <u>Jove Eng'g, Inc. v. IRS</u>, 92 F.3d 1539, 1546 (11th Cir. 1996).   Once the moving party makes a prima facie showing that a court order was violated however, "the burden of production shifts to the alleged contemnor to show a 'present inability to comply that goes 'beyond a mere assertion of inability....'" <u>Khimani,</u> 892 F.2d at 1516 (internal quotation marks omitted).

"Parties subject to a court's order demonstrate an inability to comply only by showing that they have made 'in good faith all reasonable efforts to comply.'" PlayNation Play Sys., Inc. v. Velex Corp., 939 F.3d 1205, 1213 (11th Cir. 2019). The focus in a civil contempt proceeding should be whether the alleged contemnor actually complied with the order at issue, not on their subjective intent. Id. This is an objective evaluation not an evaluation of subjective intent.

When a party invokes the Fifth Amendment privilege against self-incrimination in a civil proceeding the Court may draw adverse inferences against such party. See Baxter v. Palmigiano, 425 U.S. 308, 318 (1976) (noting that the prevailing rule is that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them); see also Eagle Hosp. v. SRG Consulting, 561 F.3d 1298, 1304 (11th Cir. 2009). However, Courts have held that the entry of a judgment solely because of the assertion of the Fifth Amendment is an undue burden of that right and is impermissible under the Constitution. Eagle Hosp., 561 F.3d at 1304; Wehling v. Columbia Broad. Sys., 608 F.2d 1084, 1087 (5th Cir. 1979) (noting that courts should not force a party to choose between his Fifth Amendment right to silence and his due process right to a judicial determination of his civil action).

In Eagle Hospital Physicians, the Eleventh Circuit held that the adverse inferences drawn from the defendant's assertion of his Fifth Amendment privilege were not enough on their own to award sanctions that resulted in a default judgment. Eagle Hosp., 561 F.3d at 1304, 1307. Instead, the district court also based its decision upon the objective evidence offered by the plaintiff that the defendant had

7

been intercepting confidential emails of the opposing party. Id. at 1304. The defendant invoked the Fifth Amendment in response to questions about his ability to continue to intercept such confidential communications. Id. In response to this, the district court found that the defendant had disrupted the litigation and entered a default judgment as the result of the disruption rather than as a direct result of the assertion of the Fifth Amendment. Id. The Eleventh Circuit upheld the decision on appeal on this basis. See id. at 1305, 1308. Thus, the Court held that evidence beyond the adverse inferences drawn from the defendant's invocation of the Fifth Amendment was necessary to sustain the default judgment. See id. at 1305, 1307; See also U.S. v. Rylander, 460 U.S. 752, 758 (1983) (The Fifth Amendment "has never been thought to be in itself a substitute for evidence that would assist in meeting a burden of production.").

The undersigned finds after careful review of the evidence that the third requirement for finding contempt has not been demonstrated by clear and convincing evidence by CAA USA. CAA USA asks this Court to draw adverse inferences from Defendant's answers at his deposition (ECF No. 20-2) to find that Defendant had the ability to comply with the Preliminary Injunction but has chosen not to do so.[1] However, CAA USA has been unable to point to evidence that proves by "clear and convincing" evidence that Defendant was in control of the Instagram page after the dates on which the TRO and Preliminary Injunction were entered or that he remains

---

[1] The undersigned does not opine as to whether adverse inferences may later be appropriate based on Defendant's assertion of his Fifth Amendment privilege in regards to the underlying claims but solely as it pertains to this Motion.

in control currently. See Khimani, 892 F.2d at 1516 (noting that the third requirement for finding contempt is the alleged contemnor's ability to comply); see also Eagle Hosp., 561 F.3d at 1305, 1308 (affirming sanctions resulting in default judgment based upon objective evidence and the defendant's invocation of the Fifth Amendment); Rylander, 460 U.S. at 758 (noting that the Fifth Amendment is not a substitute for evidence required to meet a parties' burden of production).

Further, the questions posed to Defendant by CAA USA at Defendant's deposition do not clearly establish that the conduct or actions discussed occurred after July 28, 2020, when the TRO was entered or after August 7, 2020, when the Preliminary Injunction was entered. (ECF No. 9; 17)  The only question posed to Defendant at his deposition which speaks clearly to conduct occurring after the Preliminary Injunction was entered is the question of whether Defendant had done anything since the Preliminary Injunction was entered to cooperate with CAA USA to restore the Instagram page. (ECF No. 20-2 at 20)  While Defendant invoked his Fifth Amendment privilege in response to this question, an adverse inference drawn from this invocation does not establish the third requirement for finding contempt because it fails to speak to Defendant's ability to comply with the Preliminary Injunction. Jove Eng'g, Inc. v. IRS, 92 F.3d 1539, 1546 (11th Cir. 1996).  Thus, even if the Court were to choose to draw an adverse inference from Defendant's invocation of the Fifth Amendment, the questions posed still do not satisfy the requirements to find contempt by clear and convincing evidence. See id.

CAA USA also contends that they have at least made a prima facie showing that a court order was violated and thus, the burden of production should shift to

9

Defendant to demonstrate "present inability to comply that goes 'beyond a mere assertion of inability. . . .'" Khimani, 892 F.2d at 1516; see also PlayNation Play Sys., Inc. v. Velex Corp., 939 F.3d 1205, 1213 (11th Cir. 2019) ("Parties subject to a court's order demonstrate an inability to comply only by showing that they have made 'in good faith all reasonable efforts to comply.'").  Defendant testified at the hearing on the instant Motion that he had turned over everything he had to CAA USA after quitting and that he did not believe that he could be of any further help to CAA USA regarding the restoration of the Instagram page.  This testimony is consistent with Defendant's testimony at the Preliminary Injunction hearing (ECF No. 15) and is also consistent with what Colton Carter testified to regarding Defendant's statement to him that Defendant did not have the login credentials to the Instagram page.

Based on the foregoing, the undersigned finds that: (1) Defendant turned over the login credentials to CAA USA's Twitter and Pinterest page to CAA USA; (2) Defendant volunteered to return any pictures and media which he had that belonged to CAA USA to CAA USA within a week of the hearing on the instant Motion; (3) Defendant testified that he has turned over everything that he has in terms of login credentials to CAA USA and that there is nothing further he can do to assist CAA USA in restoring the Instagram page; (4) CAA USA cannot establish by clear and convincing evidence who had control over the Instagram page while certain actions occurred or who has control currently; (5) the questions posed at Defendant's Deposition (ECF No. 20-2) do not clearly establish what, if any, conduct occurred after the TRO and the Preliminary Injunction were entered; and (6) the one question that does speak to such conduct does not demonstrate Defendant's ability to comply with

10

the TRO or Preliminary Injunction. (ECF No. 20-2 at 20)  As CAA USA has not established that Defendant has the ability to comply with the TRO/Preliminary Injunction, the undersigned finds that Plaintiff has failed to show that Defendant should be incarcerated when it has not been established by clear and convincing evidence that Defendant has the "key" to open the jailhouse door.

Accordingly, the undersigned recommends that Defendant Elliot Brownstein should not be found in contempt.

## IV. CONCLUSION

After careful review of CAA USA's Motion, the entire case file, oral argument, the testimony of the witnesses, the evidence presented, and the applicable law, it is hereby

RECOMMENDED that Plaintiff's Expedited Motion to Enforce Preliminary Injunction and For an Order To Show Cause Why Defendant Elliot Brownstein Should Not Be Held In Contempt of Court (ECF No. 20) be DENIED.

The parties will have fourteen (14) days after being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable William P. Dimitrouleas, United States District Judge. See 28 U.S.C. § 636(b)(1) (providing procedure for review of magistrate judge Report and Recommendation). Failure to timely file objections shall bar the parties from a de novo determination by Judge Dimitrouleas of any issue covered in this Report and shall bar the parties from challenging, on appeal, the factual findings accepted or adopted by this Court, except upon grounds of plain error or manifest injustice. See

Thomas v. Arn, 474 U.S. 140, 145–53 (1985); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

DONE AND SUBMITTED at Fort Lauderdale, Florida this 14th day of September 2020.

                                                      LURANA S. SNOW
                                                     UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Honorable William P. Dimitrouleas

All Counsel of Record

Defendant Elliot Brownstein, pro se,

    1189 Lake Victoria Drive, Apt. 1

    West Palm Beach, FL   33411